**HALPER SADEH LLP**
Zachary Halper, Esq.
36 Kingston Run
North Brunswick, NJ 08902
Tel: (212) 763-0060
Fax: (646) 776-2600
Email: zhalper@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| FRANK VISSER, | Case No: |
| Plaintiff, | |
| v. | **COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** |
| | **JURY TRIAL DEMANDED** |
| VITAMIN SHOPPE, INC., ALEXANDER W. SMITH, DEBORAH M. DERBY, DAVID H. EDWAB, MELVIN L. KEATING, GUILLERMO MARMOL, HIMANSHU H. SHAH, TIMOTHY J. THERIAULT, SING WANG, and SHARON M. LEITE, | |
| Defendants. | |

Plaintiff Frank Visser ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

## NATURE OF THE ACTION

1.      This is an action against Vitamin Shoppe, Inc. ("Vitamin Shoppe" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange

1

Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of Vitamin Shoppe by Franchise Group, Inc. (formerly known as Liberty Tax, Inc.) ("Liberty Tax") and Valor Acquisition, LLC ("Merger Sub").[1]

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the Company conducts business in this District and maintains its headquarters in this District.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff is, and has been at all relevant times hereto, an owner of Vitamin Shoppe common stock.

---

[1] On September 19, 2019, Liberty Tax, Inc. announced that it had changed its name to Franchise Group, Inc. as part of an effort to "focus[] on the acquisition of, or investment in, franchise-oriented or complementary businesses."

7.      Defendant Vitamin Shoppe, through its subsidiaries, operates as an omni-channel specialty retailer and contract manufacturer of nutritional products in the United States and internationally. Vitamin Shoppe is incorporated in Delaware with principal executive offices located in Secaucus, New Jersey. The Company's common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol, "VSI."

8.      Defendant Alexander W. Smith ("Smith") is the Non-Executive Chairman of the Board of the Company.

9.      Defendant Deborah M. Derby ("Derby") is a director of the Company.

10.     Defendant David H. Edwab ("Edwab") is a director of the Company.

11.     Defendant Melvin L. Keating ("Keating") is a director of the Company. Pursuant to an April 20, 2018 cooperation agreement between the Board and Vintage Capital Management, LLC ("Vintage Capital"), the Company agreed to appoint Defendant Keating to the Board (this cooperation agreement is referred herein to as the "Vintage Capital Cooperation Agreement"). Vintage Capital and its affiliates own approximately 14.9% of the Company's outstanding common stock as of November 5, 2019.

12.     Defendant Guillermo Marmol ("Marmol") is a director of the Company.

13.     Defendant Himanshu H. Shah ("Shah") is a director of the Company. Defendant Shah served as founder, President, and Chief Investment Officer of Shah Capital Management, Inc. ("Shah Capital") since January 2005, and Managing General Partner of Shah Capital Opportunity Fund LP since July 2006. Pursuant to an April 20, 2018 cooperation agreement between the Board and Shah Capital (the "Shah Capital Cooperation Agreement"), the Company agreed to appoint Defendant Shah to the Board. Shah Capital and its affiliates beneficially own approximately 17.6% of the Company's outstanding common stock as of November 5, 2019.

14.     Defendant Timothy J. Theriault ("Theriault") is a director of the Company.

15.     Defendant Sing Wang ("Wang") is a director of the Company. Pursuant to the Shah Capital Cooperation Agreement, the Company agreed to appoint Defendant Wang to the Board.

16.     Defendant Sharon M. Leite ("Leite") is the Chief Executive Officer (the "CEO") of the Company. In July 2018, the Company announced that, in addition to being appointed as CEO effective August 27, 2018, Defenant Leite would become a member of the Board.

17.     Defendants Smith, Derby, Edwab, Keating, Marmol, Shah, Theriault, Wang, and Leite are collectively referred to herein as the "Individual Defendants."

18.     Defendants Vitamin Shoppe and the Individual Defendants are collectively referred to herein as the "Defendants."

## OTHER RELEVANT ENTITIES

19.     Liberty Tax, through the operations of Liberty Tax Service, Buddy's Home Furnishings, Sears Outlet Business, its indirect subsidiaries, franchises and operates a system of tax preparation, rent-to-own stores and discounted home goods retail locations. Liberty Tax primarily focused on tax preparation services in the United States and Canada, but is undergoing a shift in strategic direction, focusing on the acquisition of, or investment in, franchise-oriented or complementary businesses. Liberty Tax maintains principal executive offices in Virginia Beach, Virginia.

20.     Vintage Capital purports to be a "value-oriented, operations-focused, private and public equity investor specializing in the defense, manufacturing and consumer sectors." Certain Vintage Capital affiliates are investors in Liberty Tax and its subsidiaries and certain Vintage Capital personnel are members of the board of directors of Liberty Tax. Vintage Capital

beneficially owns approximately 14.9% of the Company's outstanding shares as of November 5, 2019.

## SUBSTANTIVE ALLEGATIONS

### A.  Background of the Company

21.     Vitamin Shoppe is an omni-channel, specialty retailer of nutritional products.

22.     Vitamin Shoppe carries a retail assortment, which includes: vitamins, minerals, specialty supplements, herbs, sports nutrition, homeopathic remedies, green living products, and beauty aids. In addition to offering products from approximately 700 national brands, Vitamin Shoppe also carries products under the following brands: The Vitamin Shoppe®, BodyTech®, Body Tech Elite®, True Athlete®, plnt®, ProBioCare®, and Next Step®.

23.     Vitamin Shoppe conducts business through its website and more than 750 company-operated retail stores.

### B.  Background of the Sales Process Leading up to the Proposed Transaction

24.     Beginning in 2017, Vitamin Shoppe explored the possibility of entering into a strategic transaction. Vitamin Shoppe engaged with several potential strategic partners in 2017.These discussions did not result in an acquisition of Vitamin Shoppe.

25.     On March 9, 2018, Vintage Capital delivered a notice of its intent to nominate a slate of ten nominees for election as directors at the Company's 2018 Annual Meeting of Stockholders (the "2018 Annual Meeting") in opposition to director nominees recommended by the Board.

26.     On March 18, 2018, Vintage Capital entered into a joint filing and solicitation agreement with Shah Capital pursuant to which Vintage Capital and Shah Capital agreed to form a "group" for the purpose of seeking representation on the Board at the 2018 Annual Meeting.

27.     On April 20, 2018, the Company entered into the Vintage Capital Cooperation

Agreement and the Shah Capital Cooperation Agreement. Pursuant to the Vintage Capital Cooperation Agreement, the Company agreed to appoint Defendant Keating to the Board. Pursuant to the Shah Cooperation Agreement, the Company agreed to appoint Defendant Shah and Defendant Wang to the Board.

28.     Nearly a year later, on April 16, 2019, Vintage Capital expressed preliminary interest in acquiring the Company at a price between $8.00 and $9.00 per share.

29.     On April 30, 2019, the Board determined that, in light of Vintage Capital's ownership of 15% of the Company's common stock and Shah Capital's ownership of 18% of the Company's common stock, as well as the representation of persons designated by Vintage Capital and Shah Capital on the Board, that the Board would form a special committee (the "Special Committee") to, among other things, review and evaluate the indication of interest from Vintage Capital and any other strategic transaction involving the Company, and recommend, reject or seek to modify the terms of a possible transaction, including negotiating the terms thereof. The Board appointed to the Special Committee those directors who were purportedly neither affiliated with nor appointed by Vintage Capital or Shah Capital and who were not members of management: Defendants Derby, Edwab, Marmol, Smith and Theriault.

30.     On July 3, 2019, Vintage Capital submitted a revised verbal indication of interest to potentially acquire the Company at $7.00 per share.

31.     On July 10, 2019, Party D submitted a written non-binding indication of interest for an all-cash acquisition of the Company at a price between $5.00 and $6.00 per share.

32.     On July 31, 2019, Liberty Tax submitted an indication of interest for an all-cash acquisition of the Company at a price of $6.50 per share, with a representative from Liberty Tax noting that any acquisition of the Company would be effected by Liberty Tax and not Vintage

Capital. That same day, Liberty Tax executed a joinder to the Company's confidentiality agreement with Vintage Capital.

33.     Over the course of the next several days, the parties negotiated and exchanged drafts of a merger agreement. The Company ultimately negotiated a 29-day go-shop period.

34.     During the go-shop period, at the direction of the Special Committee, the Company's financial advisor contacted 73 parties, including 11 strategic and 62 financial parties. Four of these parties entered into confidentiality agreements with the Company and were granted access to the electronic data room maintained by the Company.

35.     On August 29, 2019, representatives of Party H, Party H's financial advisor and a potential debt financing source for Party H participated in a meeting with members of the Company's senior management and the Company's financial advisor to discuss the Company's business and operations and certain financial projections.

36.     On September 5, 2019, Party H submitted a proposal to acquire the Company for $7.25 per share in cash (the "Go-Shop Proposal").

37.     On September 9, 2019, the Company "issued a press release disclosing the existence of the Go-Shop Proposal, in addition to the Special Committee's determination that Party H had been designated as an Excluded Party and that the Go-Shop Proposal was reasonably likely to lead to a Superior Proposal under the Merger Agreement."

38.     On September 20, 2019, representatives of Party H's financial advisor informed representatives of the Company's financial advisor that Party H continued to conduct due diligence and seek committed financing in connection with the Go-Shop Proposal.

39.     On September 23, 2019, the Company determined to cease negotiations with Party H as of such date in light of the purported failure of Party H to obtain committed financing.

**C. The Proposed Transaction**

40.     On August 8, 2019, Vitamin Shoppe and Liberty Tax issued a press release announcing that they had entered into a merger agreement whereby Liberty Tax would acquire Vitamin Shoppe for $6.50 per share. The press release states, in pertinent part:

**The Vitamin Shoppe® to be Acquired by Liberty Tax**

***The Vitamin Shoppe Shareholders to Receive $6.50 Per Share in Cash, Representing 43% Premium to Last Closing Price***

***Transaction Will Deliver Long-Term Benefits to The Vitamin Shoppe Associates, Customers and Business Partners While Further Positioning The Vitamin Shoppe as a Leader in Health and Wellness***

***Transaction Represents Continued Implementation of Liberty Tax Strategy to Acquire Franchise-Centric Businesses***

August 08, 2019 06:30 AM Eastern Daylight Time

VIRGINIA BEACH, Va. & SECAUCUS, N.J.--(BUSINESS WIRE)--Liberty Tax, Inc. (OTC PINK: TAXA) ("Liberty Tax"), the parent company of Liberty Tax Service and Buddy's Home Furnishings, and Vitamin Shoppe, Inc. (NYSE: VSI) ("The Vitamin Shoppe"), an omni-channel, specialty retailer of nutritional products, today announced that they have entered into a definitive agreement under which Liberty Tax will acquire The Vitamin Shoppe in an all cash transaction valued at approximately $208 million. The Vitamin Shoppe shareholders will receive $6.50 per share, which represents a premium of 43% to its closing share price on August 7, 2019, and a premium of approximately 59% to the 30-day volume weighted average price for the period ended on August 7, 2019.

The transaction is expected to be completed in the fourth quarter of 2019, subject to approval by The Vitamin Shoppe's shareholders, expiration or termination of the applicable waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as well as other customary closing conditions.

\*          \*          \*

Sharon Leite, CEO of The Vitamin Shoppe, stated, "Following a careful and disciplined assessment, the board of directors has concluded that the acquisition proposal from Liberty Tax maximizes value for our shareholders. The transaction also delivers long-term benefits to our associates, customers and business partners. It provides an immediate premium to our current shareholders and aligns The Vitamin Shoppe with a partner that shares our strategic vision to unlock the further

potential of The Vitamin Shoppe as a leader in health and wellness. We are committed to transforming into an agile, customer-first organization that differentiates our brand through best-in-class quality, innovation and expertise across our products and services."

Under the direction of its board of directors, Liberty Tax intends to continue to evaluate the acquisition of franchise-oriented or complementary businesses, including businesses that are not presently subject to franchising arrangements but that have the potential to be franchised in the future. The Vitamin Shoppe transaction represents the continued evolution of the business model of Liberty Tax, and follows the recent acquisition of Buddy's Home Furnishings, which was completed in July 2019. In recognition of this new strategic focus, Liberty Tax previously announced its intention to change its name to Franchise Group, Inc. Liberty Tax anticipates that its name change will become effective in the third or fourth quarter of 2019.

Kirkland & Ellis LLP acted as legal counsel to The Vitamin Shoppe and BofA Merrill Lynch acted as its financial advisor. Troutman Sanders LLP acted as legal counsel to Liberty Tax.

41.     In connection with the Proposed Transaction, Vintage Fourteen, L.P., an affiliate of Vintage Capital which held approximately 14.8% of the outstanding shares of Vitamin Shoppe common stock as of or around August 8, 2019, entered into a voting agreement with the Company pursuant to which it committed to vote its shares of common stock in favor of the merger.

42.     On November 12, 2019, Defendants filed with the SEC a Schedule 14A Definitive Proxy Statement pursuant to Section 14(a) of the Exchange Act (the "Proxy Statement") in connection with the Proposed Transaction.

**D. The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

43.     The Proxy Statement, which recommends that Vitamin Shoppe shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Vitamin Shoppe's financial projections; (ii) the financial analyses performed by Vitamin Shoppe's financial advisor, BofA Securities, Inc. ("BofA"), in connection with its fairness opinion; (iii) potential conflicts of interest involving BofA; and (iv) the sales process leading up to the

Proposed Transaction.

44.     The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Background of the Merger; (ii) Recommendation of the Board of Directors and Reasons for the Merger; (iii) Certain Unaudited Prospective Financial Information; and (iv) Opinion of Vitamin Shoppe's Financial Advisor.

45.     The shareholder vote on the Proposed Transaction is scheduled for December 11, 2019. Unless and until the material misstatements and omissions (referenced below) are remedied, Vitamin Shoppe shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning Vitamin Shoppe's Financial Projections

46.     The Proxy Statement omits material information concerning Vitamin Shoppe's financial projections.

47.     The Proxy Statement provides the following:

> [I]n connection with the Merger, the Company's management prepared certain non-public financial projections as to the potential future performance of the Company for the years 2019 through 2021 (referred to as the "May Projections"), which were provided to the Special Committee in May 2019 in connection with their evaluation of the transaction. At the direction of the Special Committee, the May Projections were further updated by the Company's management for the years 2019 through 2023 and in July 2019 were provided to the Special Committee in connection with its evaluation of the Merger and to BofA Merrill Lynch in connection with its financial analyses, including BofA Merrill Lynch's financial analyses described in the section of this proxy statement captioned "—Opinion of Vitamin Shoppe's Financial Advisor" (referred to as the "July Projections" and, together with the May Projections, the "Management Projections").

48.     The Proxy Statement, however, fails to disclose the following concerning the

Management Projections: (1) all line items used to calculate (i) Gross Margin, (ii) Adjusted Gross Profits, (iii) Adjusted SG&A, (iv) Adjusted EBIT, and (v) Adjusted EBITDA; and (2) a reconciliation of all non-GAAP to GAAP metrics.

49.     When a company discloses non-GAAP financial metrics in a Proxy Statement that was relied upon by its board in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100. The SEC has increased its scrutiny of a company's use of non-GAAP financial measures as such measures can be misleading and "crowd out" more reliable GAAP information.[2]

50.     The disclosure of Vitamin Shoppe's projected financial information is material because it would provide Vitamin Shoppe shareholders with a basis to project the future financial performance of Vitamin Shoppe and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Vitamin Shoppe and its

---

[2] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Nov. 20, 2019) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

51.     Accordingly, in order to bring the Proxy Statement into compliance with SEC regulations, as well as to cure the materially misleading nature of the Management Projections, Defendants must provide a reconciliation table of the aforementioned non-GAAP metrics to their most comparable GAAP metrics. Defendants must also disclose the line item projections that were used to calculate these non-GAAP metrics. Such projections are necessary to make the non-GAAP projections included in the Proxy Statement not misleading.

52.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Vitamin Shoppe shareholders.

### 2.  Material Omissions Concerning BofA's Financial Analyses

53.     In connection with the Proposed Transaction, the Proxy Statement omits material information concerning the analyses performed by BofA.

54.     With respect to BofA's "*Selected Publicly Traded Companies Analysis*," the Proxy Statement fails to disclose the individual multiples and metrics for the companies observed by BofA in its analysis, including the EBITDA multiples.

55.      The Proxy Statement fails to disclose the following concerning BofA's "*Selected Precedent Transactions Analysis*": (1) the individual multiples and metrics for the companies observed by BofA in its analysis; (2) the premiums paid in the selected transactions; and (3) the "transaction values," as that term is used in the Proxy Statement, as well as all line items to

calculate transaction values.[3]

56.    The Proxy Statement fails to disclose the following concerning BofA's "*Discounted Cash Flow Analysis*": (1) the terminal values for the Company; (2) BofA's basis for applying exit adjusted EBITDA multiples of 2.5x to 4.0x; (3) the individual inputs and assumptions underlying the discount rates ranging from 8.5% to 10.5%; and (4) net debt as of June 29, 2019.

57.    With respect to BofA's analysis of research analysts' perspectives on Vitamin Shoppe, the Proxy Statement fails to disclose: (1) the individual one-year price targets observed; and (2) the sources thereof.

58.    The valuation methods, underlying assumptions, and key inputs used by BofA in rendering its purported fairness opinion must be fairly disclosed to Vitamin Shoppe shareholders. The description of Vitamin Shoppe's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Vitamin Shoppe shareholders are unable to fully understand BofA's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Vitamin Shoppe shareholders.

---

[3] According to the Proxy Statement, BofA "reviewed transaction values, calculated as the enterprise value implied for the target company, computed as the aggregate consideration payable in the selected transaction, plus debt, preferred equity and non-controlling interest (as applicable), and less cash and cash equivalents and marketable securities (as applicable) of the target company, as a multiple of the target company's estimated LTM EBITDA."

3. **Material Omissions Concerning Potential Conflicts of Interest Involving Vitamin Shoppe's Financial Advisor**

59.    The Proxy Statement omits material information concerning potential conflicts of interest concerning BofA Merrill Lynch.[4]

60.    The Proxy Statement discloses the aggregate revenue that BofA Merrill Lynch received during the period from August 1, 2017 through July 31, 2019 from (i) Vitamin Shoppe and/or certain of its affiliates; and (ii) Liberty Tax and certain of its affiliates, including Vintage Capital and certain of its affiliates and portfolio companies, but fails to disclose any additional fees BofA Merrill Lynch received in the two-year period leading up to the filing of the Proxy Statement and the two-year period leading up to the issuance of its August 7, 2019 fairness opinion. *See* 17 CFR § 229.1015(b)(4).

61.    Disclosure of a financial advisor's compensation and potential conflicts of interest is necessary due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

62.    The omission of the above-referenced information renders the Proxy Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to Vitamin Shoppe shareholders.

4. **Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction**

63.    The Proxy Statement omits material information concerning the sales process

---

[4] The Proxy Statement refers to "BofA Merrill Lynch" as BofA Securities, Inc. and its predecessor, Merrill Lynch, Pierce, Fenner & Smith, Incorporated.

leading up to the Proposed Transaction.

64.    According to the Proxy Statement, representatives of BofA contacted 73 parties during the go-shop period. Four of these parties entered into confidentiality agreements with the Company and were granted access to an electronic data room maintained by the Company. On September 5, 2019, during the go-shop period, Party H submitted a proposal to acquire the Company for $7.25 per share in cash. This represented a $0.75 per share premium to Liberty Tax's offer.

65.    On September 9, 2019, the Company issued a press release disclosing Party H's Go-Shop Proposal and announcing the Special Committee's determination that Party H's proposal was reasonably likely to lead to a Superior Proposal under the Merger Agreement.

66.    On September 20, 2019, the Company's financial advisor was notified by Party H's financial advisor that Party H was continuing to conduct due diligence and seeking committed financing in connection with the Go-Shop Proposal.

67.    But on September 23, 2019, the Company determined to "cease negotiations with Party H . . . in light of the failure of Party H to obtain committed financing[.]"

68.    The Proxy Statement, however, fails to disclose further details of the Company's determination to cease negotiations with Party H, including whether Party H was seeking committed financing as of September 23, 2019, whether Party H sought additional time to obtain such financing, and the Board's specific rationale for ceasing negotiations with Party H instead of providing Party H with additional time to obtain committed financing.

69.    The omission of the above-referenced information renders the Proxy Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to Vitamin Shoppe shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

49.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

50.     During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

51.     Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

52.     The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

53.     By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

54.     Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

**COUNT II**
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

55.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

56.    The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

57.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

58.    In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with and/or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of

17

the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of certain Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

59.     In addition, as the Proxy Statement sets forth at length, and as described herein, certain Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

60.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

61.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

**<u>PRAYER FOR RELIEF</u>**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and

setting it aside or awarding rescissory damages;

C.      Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act,

and Rule 14a-9 promulgated thereunder;

D.      Awarding Plaintiff reasonable costs and expenses incurred in this action, including

counsel fees and expert fees; and

E.      Granting such other and further relief as the Court may deem just and proper.

**<u>JURY TRIAL DEMANDED</u>**

Plaintiff hereby demands a trial by jury.


Dated: November 20, 2019                              Respectfully submitted,

                                                      **HALPER SADEH LLP**

                                                      /s/Zachary Halper
                                                      Zachary Halper, Esq.
                                                      36 Kingston Run
                                                      North Brunswick, NJ 08902
                                                      Telephone: (212) 763-0060
                                                      Facsimile: (646) 776-2600
                                                      Email: zhalper@halpersadeh.com

                                                      Daniel Sadeh, Esq. (*pro hac vice* application
                                                      forthcoming)
                                                      375 Park Avenue, Suite 2607
                                                      New York, NY 10152
                                                      Telephone: (212) 763-0060
                                                      Facsimile: (646) 776-2600
                                                      Email: sadeh@halpersadeh.com

                                                      *Counsel for Plaintiff*