UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| FRANK VISSER,<br><br>          Plaintiff,<br><br>v.<br><br>VITAMIN SHOPPE, INC., ALEXANDER W. SMITH, DEBORAH M. DERBY, DAVID H. EDWAB, MELVIN L. KEATING, GUILLERMO MARMOL, HIMANSHU H. SHAH, TIMOTHY J. THERIAULT, SING WANG, and SHARON M. LEITE,<br><br>          Defendants. | Civ. No. 19-cv-20545 (WJM) (LDW)<br><br>**MEMORANDUM OPINION<br>AND ORDER** |

Before the Court is plaintiff Frank Visser's Motion for an Award of Attorneys' Fees and Expenses. (ECF No. 6, 21). Defendants oppose this application. (ECF No. 18). Plaintiff seeks attorneys' fees in the amount of $125,000 for the claimed benefits he conferred upon shareholders of defendant Vitamin Shoppe, Inc. ("Vitamin Shoppe") by filing this action. In the alternative, he seeks an award of fees and damages based on defendants' alleged breach of the duty to negotiate fees in good faith. Having considered the parties' submissions, and for the reasons set for below, the motion is **DENIED** in its entirety.[1]

---

[1] The undersigned issues this Memorandum Opinion and Order in lieu of a Report and Recommendation because the relief sought in this motion is not dispositive of any claim or defense asserted in the action, Fed. R. Civ. P. 72, but rather is based upon an equitable doctrine asserted after the action's voluntary dismissal. *See Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 392-93 (1970) (analogizing fee award under common fund doctrine to "reimbursement of expenses" other than the "'conventional taxable costs'"); *Johnson v. Old World Craftsmen, Ltd.*, 638 F. Supp. 289 (N.D. Ill. 1986) (concluding that the issue of attorneys' fees is severable from the main legal issues of an action and is thus appropriate for the consideration of a magistrate); *see also Chen v. Select Income REIT*, 18-CV-10418 (GBD) (KNF), 2019 WL 6139014, 2019 U.S. Dist. LEXIS 177687

## I. BACKGROUND

On August 8, 2019, Vitamin Shoppe and Franchise Group, Inc. ("Franchise Group") issued a press release announcing that they had entered into a merger agreement pursuant to which the latter would acquire Vitamin Shoppe in an all-cash transaction valued at $208 million. The valuation, which provided shareholders with a value of $6.50 per share, represented a 43% premium over the closing share price of the previous day. (ECF No. 1 ¶ 40). The agreement was subject to a 30-day go-shop provision, which allowed Vitamin Shoppe to solicit competing offers to ensure that the merger would provide the greatest value to shareholders. During that time, Vitamin Shoppe, through its financial advisor, Bank of America Merrill Lynch ("BofA"), sought competing offers from 73 entities. (*Id.* ¶ 64). Four of these entities entered into confidentiality agreements with Vitamin Shoppe and were provided access to its electronic data room. (*Id.*).

On September 5, 2019, during the go-shop period, "Party H" submitted a cash proposal to acquire Vitamin Shoppe for $7.25 per share. (*Id.*) Vitamin Shoppe issued a press release disclosing the existence of Party H's proposal, as well as BofA's determination that Party H's offer was reasonably likely to lead to a superior proposal under the merger agreement. (*Id.*) Party H then conducted due diligence and sought committed financing. On September 23, 2019, in light of Party H's failure to obtain such financing, Vitamin Shoppe ceased negotiations with Party H and disclosed this cessation through a Form 8-K filed with the Securities and Exchange

---

(S.D.N.Y. Oct. 11, 2019) (Magistrate Judge adjudicated motion for attorney's fees premised on common benefit doctrine as non-dispositive matter); *Stein v. 1-800-Flowers.com, Inc.*, 16-cv-6252-RRM-SJB, 2019 WL 1099946 (E.D.N.Y. Mar. 7, 2019) (same). *Cf. In re: Terrorist Attacks on Sept. 11, 2001*, 03-MDL-1570 (GBD) (SN), 2019 WL 4744268, (S.D.N.Y. Sept. 30, 2019) (following entry of default judgment, Magistrate Judge created common benefit fund and authorized disbursements to counsel as non-dispositive matter).

Commission ("SEC").  (*Id.* at ¶ 67).  Vitamin Shoppe thus resumed efforts to consummate a deal with Franchise Group.

On September 30, 2019, Vitamin Shoppe filed a preliminary proxy statement with the SEC, disclosing the terms of its proposed merger with Franchise Group.  (*Id.* ¶ 46).   On November 12, 2019, Vitamin Shoppe issued the substantively similar "Definitive Proxy Statement" at issue in this action.  (ECF No. 6, Exh. 1).  After issuance of the preliminary proxy statement, four shareholder lawsuits were filed, each alleging that Vitamin Shoppe's proxy omitted material information in violation of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 and each seeking to enjoin the vote on the proposed merger. [2]

This was the fifth shareholder suit to be filed; it was commenced on November 20, 2019, nearly two months after the preliminary proxy statement was issued and just three weeks before shareholders were to vote on the proposed merger.  The Complaint charged the same securities violations, based on the same facts, and sought the same relief as the four preceding actions.  (ECF Nos. 1 & 18, Exh. B "Related Complaints").  As with each of the four shareholder-plaintiffs that had instituted suit before him, Visser sought supplemental disclosures to the proxy statement related to (1) the line-item data underlying BofA's financial projections, (2) the individual multiples and metrics observed by BofA in its comparable companies analysis, (3) the individual multiples and metrics observed by BofA in its precedent transactions analysis, and (4) individual inputs and assumptions underlying BofA's Discounted Cash Flow analysis.  (*Id.*)  Plaintiff Visser's claim for additional information regarding negotiations with Party H is likewise included in all but

---

[2] *See Stein v. Vitamin Shoppe, Inc.*, No. 19-CV-18543-WJ-MF (D.N.J. 2019); *Rosenblatt v. Vitamin Shoppe, Inc.*, No. 19-CV-01848-UNA (D. Del. 2019); *Bell v. Vitamin Shoppe, Inc.*, No. 19-CV-19334-WJM-MF (D.N.J. 2019); and *Jenkins v. Vitamin Shoppe, Inc.*, No. 19-CV-20440-WJM-MF (D.N.J. 2019)).

3

one of the related complaints filed previously.[3]  Indeed, not a single request for information ultimately issued in the supplemental disclosures was unique to the Visser Complaint.  (*Compare* ECF No. 1, *and* ECF No. 6, Exh. 2, *with* Related Complaints).

Vitamin Shoppe represents that it began its deliberations over supplemental disclosures upon the filing of the first complaint in September 2019.  (ECF No. 18 at 19).  On December 1 and 2, 2019, Vitamin Shoppe, through its attorneys, sent to all five plaintiffs' attorneys a draft of proposed supplemental disclosures, seeking plaintiffs' agreement that they would voluntarily dismiss their suits in exchange for the issuance of such disclosures.  All plaintiffs' attorneys agreed.  (*Id.* at 8).  Vitamin Shoppe then issued the eight-page supplemental disclosures to its 108-page Definitive Proxy Statement on December 3, 2019.  (*Id.*).  On December 11, 2019, shareholders overwhelmingly approved the merger with Franchise Group.  (*Id.* at 9).  All five complaining shareholder-plaintiffs dismissed their actions.  (*Id.*).

Vitamin Shoppe negotiated attorneys' fees and settled with plaintiffs' counsel in the four other shareholder actions.  (*Id.*).  Counsel in this action did not join in those collective negotiations despite the efforts of Vitamin Shoppe's attorneys to include them.  (*See id.*, Exh. C).  Plaintiff's counsel now seeks a $125,000 mootness fee based upon the alleged benefits created for Vitamin Shoppe shareholders through the supplemental disclosures issued by defendants to moot the five shareholder actions against it.  (ECF No. 6 at 20).

## II.  LEGAL STANDARDS

Although the "American Rule" generally requires that, absent statute or enforceable contract, each party to a litigation bear its own attorneys' fees and expenses, a party may be

---

[3] *See id.*, *Rosenblatt*, No. 19-CV-01848 at 7; *Bell*, No. 19-CV-19334 at 12; and *Jenkins*, No. 19-CV-20440 at 12.

awarded fees where the attorney has conferred a benefit on others by bringing suit. *See Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970); *Kahan v. Rosenstiel*, 424 F.2d 161 (3d Cir.), *cert. denied*, 398 U.S. 950 (1970). This equitable "common benefit" doctrine arises from the notion that it would be unjust to allow others to obtain the benefit of plaintiff's lawsuit without contributing to the costs incurred. *See Boeing Co. v. Van Gemert, et al.*, 444 U.S. 472 (1980). Reimbursement awards are not limited to suits that result in a monetary recovery from which fees and costs may be paid. Rather, reimbursement is permitted where the litigation has conferred a "substantial benefit on the members of an ascertainable class" and the award is assessed against the defendant corporation, such that costs may be spread proportionally among the shareholder class. *Mills*, 396 U.S. at 394; *Kahan,* 424 F.2d at 166. The benefit conferred upon the class often is capable of being assigned a specific monetary value, but the benefit need not be pecuniary in nature to justify recovery of attorneys' fees. *Mills*, 396 U.S. at 395.

To succeed on a fee claim under the common benefit doctrine, a plaintiff must satisfy three distinct elements: "(1) the plaintiff must confer a substantial benefit; (2) to members of an ascertainable class; and (3) the court must ensure that the costs are proportionally spread among that class." *Polonski v. Trump Taj Mahal Assocs.*, 137 F.3d 139, 145 (3d. Cir. 1998) (citing *Mills*, 396 U.S. 375 at 393-94). Additionally, where, as here, defendants took steps to moot a derivative action prior to final judgment, the Court must determine that: (4) "the action was 'meritorious' at the time of filing" and (5) "a causal connection existed between the action and the benefit." *Cooperstock v. Pennwalt Corp.*, 820 F. Supp. 921, 923 (E.D. Pa. 1993). The plaintiff bears the burden of demonstrating merit and substantial benefit. If the plaintiff successfully establishes these elements, the burden shifts to the defendant to prove that plaintiff's action "did not in any way cause their action which ultimately rendered the suit moot." *Id.*

An action is "meritorious" if it could have survived a motion to dismiss. *See Kahan,* 424 F.2d at 167. For the purpose of this inquiry, a plaintiff need only possess "knowledge of provable facts which hold out some reasonable likelihood of ultimate success" to establish the merit of his claim. *Joy Mfg. Corp. v. Pullman-Peabody Co.*, 729 F. Supp. 449, 454 (W.D. Pa. 1989) (quoting *Chrysler Corp. v. Dann*, 223 A.2d. 384, 387 (Del. 1966)).

The substantial benefit element, however, imposes a heavier burden upon plaintiffs. The Third Circuit has directed that courts must "scrutinize the benefits conferred from litigation carefully, lest the [common benefit] doctrine overwhelm the American rule that each party is to bear its own litigation costs." *Polonski*, 137 F.3d at 146. Accordingly, to establish that a substantial benefit was conferred upon the shareholder class, plaintiffs must demonstrate, as a factual predicate, that the supplemental information was material. *See Scott v. DST Sys.*, Civ. A. Nos. 1:18-CV-00286 (RGA); 1:18-CV-00322 (RGA), 2019 WL 3997097, at *3, 2019 U.S. Dist. LEXIS 143596, at *8 (D. Del. Aug. 23, 2019); *see also Topley v. Semgroup Group*, 19-CV-9630 (RA); 19-CV-10412 (RA), 2021 WL 1172622, at *5, 2021 U.S. Dist. LEXIS 59512, at *16 (S.D.N.Y. Mar. 29, 2021). Omitted information is material "if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 440 (1976). It is not necessary that omitted information, if disclosed, would lead a shareholder to change his or her vote. *Id.* Rather, there must exist "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable [shareholder] as having significantly altered the 'total mix' of information made available." *Id*.

A substantial benefit must be something "more than technical in its consequence." *Mills*, 396 U.S. at 396 (internal quotation and citation omitted). Thus, although informed shareholder

suffrage is recognized as an important corporate right, it is not the case that "correction of any and every omission from a proxy statement constitutes, by definition, a 'substantial benefit.'" *Cohen v. Lyondellbasell Indus. N.V.*, 492 F. Supp. 3d 14, 19 (E.D.N.Y. 2020). In the context of shareholder disclosure litigation, courts have emphasized that a corporation's duty to disclose does not extend to the provision of information so extensive as to allow stockholders to perform their own independent valuation of the company or to recreate financial advisors' analyses. *See e.g., In re Trulia, Inc. Stockholder Litig.*, 129 A.3d 884, 901 (Del. Ch. 2016); *Sodhi v. Gentium S.P.A.,* 14-CV-287 (JPO), 2015 WL 273724, at *6, 2015 U.S. Dist. LEXIS 7344, at *16 (S.D.N.Y. Jan. 22, 2015); *Mack v. Resolute Energy Corp.*, Civ A. No. 19-77 (RGA), 2020 WL 1286175, at *9, 2020 U.S. Dist. LEXIS 46776, at *25 (D. Del. Mar. 18, 2020); *Calleros v. FSI Int'l, Inc.*, 892 F. Supp. 2d 1163, 1175 (D. Minn. 2012). Because shareholders are entitled only to a "fair summary" of the underlying basis of an advisor's merger analysis, mere "quibbles with a financial advisor's work" will not suffice to constitute a substantial benefit and thereby entitle a party to attorneys' fees. *Sodhi*, 2015 WL 273724, at *6, 2015 U.S. Dist. LEXIS 7344, at *16 (quoting *In re 3Com S'holders Litig.*, Civ A. No. 5067 (CC), 2009 WL 5173804, at *6, 2009 Del. Ch. LEXIS 215, at *22 (Del. Ch. Dec. 18, 2009)).

### III.   DISCUSSION

#### A. Plaintiff's Motion for an Award of Attorneys' Fees and Costs for Claimed Substantial Benefits Conferred

Assuming *arguendo* that the other elements of the test for obtaining fees under the common benefit doctrine are met, the Court focuses on whether plaintiff is able to demonstrate that his action conferred a "substantial benefit" on Vitamin Shoppe shareholders. *Cooperstock*, 820 F. Supp. at 923. Plaintiff asserts that he is entitled to an award of attorneys' fees under the common benefit doctrine because he caused defendant Vitamin Shoppe to disclose material information not

previously disseminated, thereby substantially benefitting shareholders by providing them the opportunity to "cast a fully informed vote" on the proposed merger. (ECF No. 6 at 16).

The supplemental disclosures relied upon by plaintiff fall into four categories: (1) multiples of the comparable companies and precedent transactions selected by BofA in connection with its valuation analyses; (2) inputs underlying BofA's discounted cash flow analysis; (3) certain individual line items underlying financial projections; and (4) additional information regarding defendant's negotiations with Party H. (ECF No. 6 at 10, 16, 18-19). The Court has reviewed the record as to each of the disclosures and finds that plaintiff has failed to carry his burden of demonstrating the materiality of the information. Thus, plaintiff has not established that he has conferred upon shareholders a substantial benefit so as to warrant an award of attorneys' fees and expenses. The Court addresses each category of disclosure in turn.

1. *Additional Disclosures Related to Selected Comparable Companies Analysis and Selected Precedent Transaction Analysis*

Plaintiff complains that defendants' Definitive Proxy Statement failed to disclose individual multiples used in BofA's comparable companies and selected precedent transaction analyses. (ECF No. 1 ¶ 33). Defendants supplemented the information regarding the "Selected Publicly Traded Companies" analysis by disclosing the individual EBITDA multiples for each specialty-retail company assessed by the financial advisors in valuing the company. (ECF No. 6 at 10-11). Defendants supplemented the "Selected Precedent Transactions" information by disclosing the respective EBITDA multiples of each target company involved in the "turnaround" transactions BofA considered. Plaintiff argues that these supplementary data points were material and that their disclosure substantially benefitted Vitamin Shoppe shareholders. (*Id.* at 14). The Court is unpersuaded.

8

Plaintiff first contends that Vitamin Shoppe's omission of the individual multiples for each company and transaction BofA used in its analysis was "in itself material," but cites no authority to support the conclusion that the information supplementally disclosed is *per se* material. (ECF No. 6 at 13). As set forth in the Legal Standards section above, shareholders are not entitled to every item of information considered by financial advisors such that they may perform their own valuations. All that is required is a "fair summary of the substantive work performed by the investment bankers upon whose advice the recommendations of their board as to how to vote on a merger or tender rely." *In re Trulia, Inc. Stockholder Litig.*, 129 A.3d at 900.

Defendants' proxy statement as initially disseminated provided a fair summary of the overall low to high EBITDA multiples of the comparable companies and turnaround transactions BofA considered in its analyses. (*See* Definitive Proxy Statement at 48). Those summaries disclosed to shareholders the names of, and the range, average, and median EBITDA multiples for the public companies and precedent transactions that factored into BofA's valuation analysis, in accordance with recognized "best practices." (*Id.* at 48-49); *In re Trulia, Inc. Stockholder Litig.*, 129 A.3d at 905, n.81 (noting that a fair summary is provided to shareholders where, as here, "high, low, median, and mean multiples" are disclosed). Accordingly, the Court finds that the summaries of BofA's methodologies and assumptions included in the proxy statement as originally disclosed were adequate and that the addition of individual multiples underlying the analyses could not reasonably have been expected to significantly alter the total mix of information available, especially when that supplemental information was already publicly accessible. *See In re Trulia, Inc. Stockholder Litig.*, 129 A.3d at 905.

Plaintiff next asserts that the omission of these individual financial metrics was misleading because the companies most akin to Vitamin Shoppe "had substantially higher multiples … than

9

several other companies" considered by BofA. (ECF No. 6 at 14). Of the comparable precedent transaction analyses, plaintiff claims that the newly disclosed data "demonstrated that none of the targets were substantially similar to Vitamin Shoppe." (*Id.* at 15).

Plaintiff's criticisms are unconvincing. First, the Definitive Proxy Statement already provided the names of the selected comparable companies considered in BofA's company and transactions analyses, along with EBITDA summary information. (*See* Definitive Proxy Statement at 48-50). Thus, shareholders could draw conclusions as to the relative similarities of each to Vitamin Shoppe and its proposed merger from the information provided in the first instance. The addition of the EBITDA data points did not materially add to shareholders' ability to ascertain that some of the selected comparables were not "direct competitors of Vitamin Shoppe." (ECF No. 6 at 15).

Moreover, in evaluating comparable companies and transactions, advisors need not consider only the financial data and transaction histories of the target's direct competitors. Indeed, the Definitive Proxy Statement explains as much:

> No company, business or transaction used in this analysis is identical or directly comparable to Vitamin Shoppe or the Merger. Accordingly, an evaluation of the results of this analysis is not entirely mathematical. Rather, this analysis involves complex considerations and judgments concerning differences in financial and operating characteristics and other factors that could affect the acquisition or other values of the companies, business segments or transactions to which Vitamin Shoppe and the Merger were compared.

(ECF No. 6, Exh. 1 at 50). Because financial advisors must make various subjective judgments, based upon experience and expertise, in calculating a target corporation's value, the "criteria used to select the ranges, multiples, or transactions that the financial advisors use in their analyses are not material." *Dias v. Purches*, Civ. A. No. 7199 (VCG), 2012 WL 4503174, at *9, 2012 Del. Ch. LEXIS 227, at *32 (Del. Ch. Oct. 1, 2012). Consequently, the Court finds unpersuasive plaintiff's

contention that BofA included certain comparable companies and transactions for "no legitimate purpose but to skew the data." (ECF No. 6 at 14).

In light of the detailed summaries of the comparable companies and transactions considered by BofA already presented in Vitamin Shoppe's definitive proxy statement, the Court does not find the supplemental individual EBITDA multiples to be material or to have altered the total mix of information upon which shareholders would have relied in voting on the merger.

2. *Additional Inputs Underlying BofA's Discounted Cash Flow Analysis*

Plaintiff next alleges that defendants failed to disclose certain inputs and assumptions underlying BofA's discounted cash flow ("DCF") analysis. (ECF No. 6 at 16). A DCF analysis uses future free cash flow projections and discounts them to calculate present value. (*Id.*). Defendants supplemented the definitive proxy by disclosing that BofA arrived at its terminal value calculation by applying a range of exit adjusted EBITDA multiples based on its "professional judgment and experience and after taking into consideration, among other things, the observed data for Vitamin Shoppe and the selected publicly traded companies, the historical trading multiples of Vitamin Shoppe and the selected publicly traded companies, and certain differences in the respective financial profiles of Vitamin Shoppe and the selected publicly traded companies as described under '—Selected Publicly Traded Companies Analysis', which implied perpetuity growth rates of (3.6%) to 2.4%." (ECF No. 6 at 17).

Plaintiff essentially contends that BofA's discounted cash flow analysis was misleading because it utilized data from the comparable companies' analysis discussed above. Plaintiff refers back to his contention that BofA's consideration of "dissimilar companies" rendered their analyses "flawed and unreliable." (ECF No. 6 at 2). As the Court addressed *supra*, a financial advisor's valuation analysis is not undermined by the mere fact that the selected comparables are varied.

11

*See In re Trulia, Inc. Stockholder Litig.,* 129 A.3d at n.79.  Based upon its extensive experience in the industry and "various judgments concerning relative comparability of each of the selected companies to [Vitamin Shoppe] … [BofA] selected a range of revenue and Adjusted EBITDA multiples that it believed reflected an appropriate range of multiples applicable to [Vitamin Shoppe]." *Id.*

Plaintiff has not demonstrated to the Court *how* BofA's consideration of certain comparable companies rendered its analysis "flawed" and "unreliable," and thus has not established the materiality of such information as it relates to the DCF analysis.  Instead, plaintiff points to cases in which courts found the analyses of financial advisors defective based upon factual circumstances not present here.  (ECF No. 6 at 13-14).  The cases cited by plaintiff do not provide a *per se* standard of what is material and what is not, as materiality must be assessed on the unique facts of each case.  *See Scott*, 2019 WL 3997097, at *4-6, 2019 U.S. Dist. LEXIS 143596, at *10-12.  Because plaintiff has not adequately shown, on the factual record of *this* case, that BofA's comparable companies analysis was faulty or misleading, his conclusory argument that the DCF analysis was, by extension, "flawed and unreliable" is similarly unpersuasive.  (ECF No. 6 at 17).

As "caselaw is not evidence of what information is material" divorced from the facts of a particular case, the Court finds plaintiff's reliance on *Smith v. Robbins & Myers, Inc.*, *et al.*, 969 F. Supp. 2d 850 (S.D. Ohio 2013) inapposite.  *Scott*, 2019 WL 3997097, at *4, 2019 U.S. Dist. LEXIS 143596, at *10.  To begin, the *Smith* court, adjudicating the defendant corporation's motion to dismiss, needed only to find enough factual support in that better developed record to find plaintiff's allegations plausible.  *Id.* at 861.  Here, on far less, plaintiff asks the Court to find that he has carried the much heavier burden of establishing the element of substantial benefit necessary

to award attorneys' fees.  Moreover, before the *Smith* court were facts tending to show that the defendant corporation withheld from shareholders strategic alternatives to the challenged merger that promised greater long-term value and evidence that its financial advisors intentionally changed the inputs in its DCF analysis to mislead shareholders as to the fairness of the merger consideration.  *Id.* at 869-871.  That the *Smith* court found the defendants' omission of certain individual multiples, inputs, and assumptions material given the compelling factual context in that case is not evidence of materiality and substantial benefit here.

Because plaintiff has failed to carry his burden of establishing that he provided a substantial benefit to Vitamin Shoppe shareholders by causing the disclosure of the individual data points underlying BofA's DCF analysis, notwithstanding the summary information already provided, the Court will not award attorneys' fees based on the DCF disclosures.

   3. *Line Items Underlying BofA's Financial Projections*

Plaintiff further claims that the supplemental disclosures revealed previously omitted "critical" line items for Vitamin Shoppe's May and July Projections.  (ECF No. 6 at 18).  Plaintiff posits that, without these disclosures, Vitamin Shoppe shareholders could not "hope to replicate" the financial prospects of the company as provided in the proxy.  (ECF No. 1 at ¶ 50).  The Court reiterates that shareholders are not entitled to a "cornucopia of financial data" such that they may recreate a financial advisor's analysis.  *See In re Trulia, Inc. Stockholder Litig.,* 129 A.3d at 901 (citing *In re 3Com S'holders Litig.*, 2009 WL 5173804, at *3, 2009 Del. Ch. LEXIS 215, at *10) (rejecting claim for omission of financial projections because "an adequate and fair summary of the work performed by [the advisor] [was] included in the proxy"); *see also Resnik v. Swartz,* 303 F.3d 147, 154 (2d Cir. 2002) (stating, in the context of a challenge to a proxy statement, that "[d]isclosure of an item of information is not required . . . simply because it may be relevant or of

interest to a reasonable investor"). Because plaintiff fails to convince the Court how these specific omissions would be of any significance to a reasonable shareholder in deciding how to vote on the proposed merger, he has failed to carry his burden of demonstrating that the line-item disclosures conferred a substantial benefit upon the shareholder class warranting reimbursement of attorneys' fees and expenses.

    4. *Additional Information Relating to Vitamin Shoppe's Negotiations with Party H*

Finally, plaintiff alleges that defendants failed to provide a "full and fair summary" of Vitamin Shoppe's negotiations with Party H and a statement of "whether Party H was precluded from submitting a superior offer." (ECF No. 6 at 19). Notwithstanding defendants' September 9, 2019 press release informing shareholders of Party H's offer to purchase the company for $7.25 per share and their September 23, 2019 filing of Form 8-K disclosing the cessation of those negotiations, plaintiff complains that defendants withheld "information regarding a potentially more attractive competing offer." (*Id.*; ECF No. 1 ¶¶ 36, 39). Defendants respond that "an added reference that an entity did not submit an offer and a restatement of the entire purpose of a go-shop period are not pieces of information any 'reasonable investor would consider . . . important in deciding how to vote.'" (ECF No. 18 at 18). The Court agrees with defendants.

In the absence of any indication to the contrary, it seems obvious to the Court that Party H, like any other interested party, could have submitted and followed through on an offer to acquire Vitamin Shoppe during the go-shop period. Had Party H obtained committed financing to support its September 5 offer, Vitamin Shoppe would have been obliged to disclose to shareholders additional information pertinent to that superior proposal, but those are not the facts before the Court. Further, had Party H been precluded from submitting an acquisition proposal by a "don't ask, don't waive" ("DADW") provision, disclosure of that fact may well have been material.

Plaintiff concedes, however, that no such provision existed in the confidentiality agreements between Vitamin Shoppe and Party H or any other bidder. (ECF No. 6 at 20-21). Accordingly, the Court finds that the supplemental disclosure providing that "Party H would still be permitted to submit a proposal [. . .] should Party H wish to do so" is immaterial and did not provide the shareholder class with any benefit, let alone a substantial benefit justifying payment of attorneys' fees and costs. (ECF No. 6 at n.14). For all of the foregoing reasons, the Court finds that plaintiff has failed to demonstrate that his filing of the instant lawsuit conferred any benefit on Vitamin Shoppe shareholders. He therefore is not entitled to an award of attorneys' fees under the common fund doctrine.

### B. Plaintiff's Motion For Alternative Relief for Alleged Breach of the Duty to Negotiate in Good Faith

To the extent plaintiff further seeks, in the alternative, fees and costs pertaining to defendants' alleged failure to negotiate attorneys' fees in good faith, the Court finds no basis to impose such a sanction. Even if plaintiff had demonstrated a legal basis on which his request for alternative relief could be granted, the record is devoid of factual support for it. Plaintiff claims that defendants "refused . . . to include Plaintiff" in joint fee negotiations with counsel for four other shareholder-plaintiffs, whose complaints were nearly identical to Mr. Visser's, notwithstanding defense counsel's documented attempts to arrange a group call for the purpose of amicably resolving all fee claims and repeated instruction that plaintiff's attorneys should "connect[] with fellow plaintiffs' counsel." (ECF No. 18, Exh. C). Moreover, plaintiff's claim that defendants acted in bad faith by instructing plaintiff to engage in these group negotiations "when doing so was impossible because those fee claims were resolved" is simply not supported by the record. (ECF No. 6 at 29). In fact, counsel for Vitamin Shoppe instructed plaintiff's counsel to confer with the other plaintiffs' attorneys on February 10, 2020, approximately six months prior

to defendants' resolution of those related fee claims in late September 2020.  (*See* ECF No. 18 at 10 & Exh. C).  Because there is no factual basis to support plaintiff's allegations with respect to defendants' negotiation and settlement efforts, the Court denies the alternative relief sought.

## IV.    CONCLUSION

For the foregoing reasons, the Court DENIES plaintiff's motion.

Dated:  December 17, 2021.

_____
**Leda Dunn Wettre**
**United States Magistrate Judge**


Original:     Clerk of the Court
       cc:    Hon. William J. Martini, U.S.D.J.
              All Parties